NETTA WHITTAKER, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

291 N. W. 275

FILED MARCH 29, 1940. No. 30773.

*Benjamin S. Baker, Fred A. Wright* and *Edward Shafton,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an action for damages for personal injuries sustained by plaintiff on account of the alleged negligence of defendant in operating a street car. The jury returned a verdict for the defendant. Plaintiff appeals.

Plaintiff's petition and the allegations thereof to create liability as against defendant may be more fully discerned from the evidence. The defendant's answer denies that the

plaintiff received any injuries due to any negligence on the part of its motorman in the operation of its street car. The reply is, in effect, a general denial.

The record discloses that plaintiff, a woman 66 years of age at the time of the accident, took care of her husband's office during the past few years. To do so she was required to travel on street cars, going downtown and returning five or six times a week. She had traveled on street cars for 52 years. On November 7, 1937, at 5:30 in the afternoon, plaintiff, with her husband, intending to go to the Joslyn Memorial in Omaha, boarded a street car at Fifty-first and Leavenworth streets. She preceded her husband to the platform of the street car. As to what happened is reflected by her testimony as follows: "A. Well, when I started to step up into the car, of course I was thrown off my balance when it jerked the first time, and as I started to step into this car I reached for this rod, it pitched me so quick that I fell from the front of the street car to that little cross seat, fell down and struck my—struck the knees, tore the skin all off the knees and they were both bleeding and I don't know when I hit my ankle." She fell prostrate on the floor of the street car; her elbows and knees were injured and bleeding. The nature of the jerking as described by her was very severe and of a character she had never before experienced when on a street car. She was lifted to her feet by a young man and sat on a side or long seat of the car. The plaintiff and her husband left the street car at Twenty-ninth street and Leavenworth, had lunch at a café, remained there for an hour, then boarded a street car and proceeded to Fifty-seventh street and Leavenworth, to the home of Mrs. Elizabeth Weber, who attended plaintiff.

Plaintiff's husband testified in substance as follows: "Well, I was standing there, I had handed him (the motorman) my money, waiting for my car checks, when the car gave a lurch, a jerking, then all at once it gave a second jerk, when I had to grab the iron railing there to keep me from falling and then he started again and I looked and my

wife was in the car flat on the floor." He had for more than 50 years past had occasion to travel on street cars and for a great many years in the neighborhood where he had boarded this car, and the jerk or lurch, he testified, was the severest he had experienced during all of such time. In the front part of the car there is a side seat on either side, 10 or 12 feet long, then cross seats. The plaintiff "was lying flat on the floor, face down, with her head pretty well up to the cross seats." He immediately called the motorman's attention to what had occurred.

The motorman testified: The car runs east and west on Leavenworth. There are two tracks on Leavenworth, and the street runs east downhill. He is in a sitting position when he operates the car, and when plaintiff and her husband boarded the car he came to a complete stop at Fifty-first and Leavenworth, opened the door and then closed it. He further testified, in substance, that there was a small amount of air in the brake, having a tendency to hold and keep the car from jerking. He fed the air slowly, as was his custom in operating the car. After the car started to move, or started rolling, as he expressed it, he shut off the power. He denied that the car jerked, as testified by the plaintiff and her husband. He glanced around and saw a boy attending the plaintiff. At that time plaintiff and this boy were seated on a long seat in the car. He did not see the plaintiff fall to the floor; nor did he remember any statement made by the plaintiff's husband to him, but admitted that he might have made some statement. After the plaintiff had fallen and when the young man was assisting her, plaintiff's husband was standing by the motorman; then proceeded to the plaintiff's side. The motorman took no names of witnesses, made no report of the accident, and contends that there was no jerking within a distance of 100 feet after he started the car. At the time of the accident, the motorman had been in the employ of the defendant company for a period of two weeks. He testified that he had been trained by other operators for a period of 10 days, several hours at a time, before assuming his duties. He

did not remember whether he started the car before or at the time plaintiff's husband paid the fare. He learned the next day that a claim had been made against the defendant and then reported the accident.

From the foregoing facts it is apparent that plaintiff's contention is that the motorman operating the street car, while proceeding east on Leavenworth street, started the car, then violently and suddenly stopped the car, throwing the plaintiff off-balance, and, before she could regain her balance, the motorman, with great violence, suddenly started the car forward.

The plaintiff first assigns as error the giving of instruction No. 6. This instruction defines negligence and ordinary care. The contention is that the instruction is inapplicable to common carriers for hire. The degree of care to be exercised by the operator of a street car is expressed in *Daly v. Publix Cars*, 128 Neb. 403, 259 N. W. 163, which held: "Common carriers of passengers 'are required to exercise the utmost skill, diligence and foresight consistent with the business in which they are engaged for the safety of the passengers, and they are liable for the slightest negligence.' *Griffen v. Lincoln Traction Co.*, 118 Neb. 459."

The preceding instructions to instruction No. 6 given by the court define the issues, the burden of proof and the definition of "preponderance of the evidence." Instruction No. 7 properly defines the degree of care to be exercised by the operator of a street car for the safety of passengers riding therein, and meets the rule as announced in *Daly v. Publix Cars, supra*. Plaintiff's petition uses the term "negligence," and instruction No. 6 merely defines the term. Such instruction, if erroneous, is without prejudice. See *Hardung v. Sheldon*, 133 Neb. 427, 275 N. W. 586.

Plaintiff next complains of instruction No. 10 given by the court as follows: "You are instructed that the plaintiff brings this action alleging that her fall was caused by a sudden, violent and unnecessary jerk or lurch of the car. Now, you are instructed that it is not sufficient for the plaintiff to show merely that she was injured by a jerking

or lurching of the car. She must go further and show that the jerking or lurching was of such an unusual character as to warrant an inference of negligent handling of the car." The contention is that the plaintiff did not allege in her petition that it was an unnecessary jerk or lurch; that the defendant may be liable whether the jerk or lurch was unnecessary or not. The language used by the court is "that her fall was caused by a sudden, violent and unnecessary jerk or lurch." In this class of cases the plaintiff has the burden of proving by a preponderance of the evidence the following: In an action by a passenger for damages against a street railway company, it is not sufficient for plaintiff to show merely that she was injured by jerking or lurching of the car; she must go further and show that the jerking or lurching was of such an unusual character as to warrant an inference of negligent handling of the car, or that it was attributable to some act of negligence. *McCann v. Omaha & C. B. Street R. Co.*, 117 Neb. 786, 222 N. W. 633.

In 13 C. J. S. 1410, sec. 750, the rule is concisely stated as follows: "A carrier is not liable for jerks or jolts which are necessarily incident to the use of the conveyance, but the rule is otherwise where the jerk or jolt is unnecessary, or sudden and violent." By the use of the word "unnecessary" in the instruction complained of, the court did not err. Any violent and sudden jerk of such an unusual character as to warrant an inference of negligence in the operation or handling of the street car, under the rule as announced in *McCann v. Omaha & C. B. Street R. Co., supra*, would be an unnecessary jerk or jolt.

Plaintiff next complains of the giving of instruction No. 11 as follows:

"You are instructed that it is a matter of common knowledge that street cars operated upon rails make some movement when they start, and for the ordinary jerks or lurches usually and ordinarily incident to the starting and stopping of a street car, there is no liability upon the part of the company and even though the plaintiff fell as the result

of the ordinary and usual jerking or lurching incident to starting or stopping a car, there would be no liability upon the part of the defendant.

"The plaintiff must go further and show that the jerking or lurching or movement of the car was of an unusual character."

Plaintiff's contention is: After the motorman started the car forward, he then reversed its movement and then moved it forward again; in all, constituting three movements in the operation of the car, all included as a part of the starting of the car; therefore, the manner of stopping the car is beside the point, and the instruction tends to mislead the jury, for the reason that the jury could well apply the instruction to the negligent stopping in the starting of the car; that is, the instruction is broad enough to include negligent stopping in the process of starting the car, and that by such instruction the plaintiff must anticipate such a stop; must anticipate that the car would jerk or lurch and prepare herself against such jerking and lurching.

The plaintiff's evidence, as we view it, attempts to show that the street car jerked in starting; that when the motorman attempted to start the car there were two jerks. The instruction complained of is not misleading or prejudicial when considered with all of the instructions given.

Plaintiff next contends that the court erred in giving instruction No. 12 as follows: "You are instructed that a street railway company is under no obligation to keep a car immovable until passengers have reached a seat within the car." The record discloses that the plaintiff entered the car, passed the motorman, and was proceeding into the main part of the car, evidently to seat herself, when the jerks of which she complains occurred, and before she reached her seat she fell, as testified. In previous instructions the court set forth the claims of the plaintiff and required her to prove by a preponderance of the evidence that the jerking or lurching of the car, resulting in her fall and injuries, was of such an unusual character as to warrant an inference of negligent handling of the car, or that it was

attributable to some act of negligence. See *McCann v. Omaha & C. B. Street R. Co., supra*; also 13 C. J. S. 1382, sec. 733. Instruction No. 12 is proper when considered with all of the instructions in the case.

The plaintiff next complains of instructions 13 and 14. Instruction No. 13 reads: "You are instructed that passengers on trolley cars, in exercising reasonable care for their own safety, must take advantage of supports to guard against ordinary jars or lurches, since passengers are charged with knowledge that the operation of a trolley car not infrequently occasions ordinary jars and lurches." Instruction No. 14 reads: "It is the duty of passengers on street cars on entering and progressing towards a seat to take reasonable care of themselves not to fall by reason of motions of the car that are necessarily made in the operation of the street cars. And should a passenger be injured, even by the motions of the car that are made reasonable and necessary in the operation of such cars on the streets, then there is no responsibility by the street car company in damages to the one injured, no matter how severe the injury may be, as a passenger assumes all the risks that are ordinary and usual in the way of jerking or lurching in the ordinary and necessary operation of the car. The plaintiff must go further and show that the jerking and lurching movement of the car of which she complains was of an unusual and forcible nature, and so forcible that a reasonable passenger knowing that he must take reasonable care of himself against ordinary movements of cars would not have reasonably anticipated."

The error complained of in the giving of instructions 13 and 14 is that the defendant's answer does not contain an allegation of contributory negligence on the part of the plaintiff, and that the instructions here given place a duty on the plaintiff; that instruction No. 13 indirectly admits that plaintiff did not exercise reasonable care for her safety, and that instruction No. 14 assumes negligence on the part of the plaintiff.

The court did not submit the issue of contributory negli-

gence to the jury; such issue was not pleaded by defendant. The instructions heretofore recited disclose the ordinary risks that are assumed by passengers riding in street cars. The crux of the plaintiff's case is not the result of an ordinary jerk or one that is incident to the mode of travel, but a sudden, violent jerk of an unusual character, such as to warrant an inference of negligence in the handling or operation of the car. *McCann v. Omaha & C. B. Street R. Co., supra.* We believe that the instructions are self-explanatory. It is proper for the trial court to give instructions to apprise the jury of the duties of a passenger riding in a street car. Such instructions do not tell the jury that the passenger violated any duty; nor do the instructions tell the jury they should ascertain whether or not the passenger violated any duty for her own safety under the circumstances.

The plaintiff complains of the giving of instruction No. 15, to the effect that plaintiff suffered from a physical ailment, leakage of the heart, many years before the accident in question, and that she had been under the observation and treatment of a physician for such ailment; that the evidence now shows that she has leakage of the heart, and that the heart is at this time compensated; that under the evidence "you could not find that the heart disease in question, i. e. mitral regurgitation or leakage of the heart was caused by the accident, but only that it may have been aggravated." The evidence establishes the foregoing facts, and the instruction is not erroneous.

Instruction No. 16 is also complained of which told the jury that plaintiff sustained only temporary injuries to her ankle and knee, and that no claim is made for permanent disability thereto. The evidence fully sustains this statement, and the instruction is free from error.

In *Gibson v. Glens Falls Ins. Co.,* 111 Neb. 827, 197 N. W. 950, this court held: "It is not error for the court in an instruction to assume as true facts that are established by the evidence without controversy." See, also, *Major v. Harrison,* 132 Neb. 363, 272 N. W. 201.

Plaintiff next complains of the refusal of the trial court to give offered instruction. No. 7 and of the giving of instruction No. 18, both on the measure of damages. We have carefully read the offered instruction and that given by the court on this proposition. The objection to instruction 18 is to the following paragraph: "But you will not allow anything by way of doctor's bills, medical expense or loss of time from her usual occupation as a housewife, since any claim for these items has vested in her husband." While this language may not have been necessary in the instruction, it nevertheless is a proper statement and is. not prejudicial.

"Where the instructions as a whole clearly present to the jury the issues of fact and the law applicable thereto, harmless error in instructions separately criticized on appeal does not require a reversal of the judgment on the verdict." *Interstate Airlines, Inc., v. Arnold,* 127 Neb. 665, 256 N. W. 513.

Plaintiff next contends that the verdict is not sustained by sufficient evidence, is contrary thereto and not sustained by law. The plaintiff's objection seems to be that the testimony of plaintiff and her husband should overbalance the testimony of the motorman, who denied their testimony. There are two versions of what occurred and the manner in which it happened, constituting a direct conflict in the testimony.

"In an action at law for damages, a controverted issue of fact is a question for the jury, and, when they pass on evidence which is substantially conflicting, their finding in that respect will not be set aside on appeal unless clearly wrong." *Mensinger v. Ainsworth Light & Power Co.,* 94 Neb. 465, 143 N. W. 475. See *Hahn v. Doyle,* 136 Neb. 469, 286 N. W. 389; *Dworak v. Shire,* 126 Neb. 474, 253 N. W. 655; *Prince v. Pathfinder Life Ins. Co.,* 133 Neb. 705, 276 N. W. 661.

For the reasons given, the judgment of the district court is

AFFIRMED.

JOHNSEN, J., not participating.